OPINION OF THE COURT
Harold Fertig, J.
On November 19,1981, the Court of Appeals, in the case of People v Ponder (54 NY2d 160) adopted the rule defined in United States v Salvucci (448 US 83), which abrogated the “automatic standing” rule for a defendant to challenge a search which was in violation of his Fourth Amendment rights. This defendant, a passenger in a motor vehicle, brought a motion requesting the court to order a hearing to determine the standing of the defendant to move for the suppression of evidence seized on some grounds which are novel in the State of New York.
The original motion of the defendant was granted to the extent that the court ordered a hearing to determine whether the defendant had such standing.
At the hearing, testimony was presented, and the court finds that on or about September 15, 1982, at about 4:00 a.m. the defendant left a discotheque known as “The Native New Yorker”. Outside, he met Kenneth Bass and John Bass, who were parked in their vehicle and, at their invitation, entered the car with the intent of going to the White Castle for hamburgers. Just before reaching their destination, the vehicle was pulled over by a police officer *523 and everyone was ordered out of the car. Kenneth Bass was arrested and handcuffed and both the defendant and John Bass were searched. Subsequently, the vehicle itself was searched. A small amount of cocaine was found under the seat where defendant had been sitting in the rear of the vehicle and other controlled substances were found in the trunk of the vehicle. Neither John nor Kenneth Bass are before the court at this time.
The defendant contends that the stop was made without probable cause and that the search was in violation of his constitutional rights. He contends that he had a right to privacy in the vehicle where he was a passenger and particularly the area under that seat which he himself occupied. He further contends that he' has standing to question both the search and the stop. He argues that he had a reasonable expectation of privacy in the vehicle, primarily because of the provisions of section 220.25 of the Penal Law, which provide that the presence of a controlled substance in an automobile is presumptive evidence of knowing possession by each person in that vehicle. He states that there is an inconsistency in permitting the prosecution to prove a possessory crime by a presumption and at the same time take the position that the defendant has no standing to question the search.
In Rakas v Illinois (439 US 128), the court in part addressed a similar situation and found that merely because the defendants in that case were in the car (at p 148) “with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched.” The court held (p 134), “A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person’s premises or property has not had any of his Fourth Amendment rights infringed.” The defendants in that case asserted neither a property nor a possessory interest in the automobile or in the property seized, and the fact that they were legitimately on the premises, that is, with the permission of the owner, was held not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched. Nor was there *524 a showing that they had any legitimate expectation of privacy in the area under the seat of the car in which they were merely passengers, or in the trunk of that vehicle.
One thrust of the defendant’s argument, in this case, is that the law is inconsistent if it provides that there is a presumption that he owned the property seized and at the same time he has no standing to question the search which resulted in discovering that property. In United States v Salvucci (supra), the court reasoned that the original “automatic standing” rule was adopted to. prevent both the risk that self incrimination would attach to the assertion of Fourth Amendment rights and prevent prosecutorial self-contradiction. The court then further reasoned that the automatic standing had been affected by time since testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial, citing Simmons v United States (390 US 377). In addition, that court found that a prosecutor may with legal consistency and legitimacy assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure and found that it was clearly established in Rakas v Illinois (supra), that a prosecutor may simultaneously maintain that a defendant criminally possessed the seized goods, but was not subject to a Fourth Amendment deprivation, without legal contradiction.
It is not merely the right of ownership or possession which determines a person’s Fourth Amendment privileges and the court went on to say (United States v Salvucci, supra, p 91) “While property ownership is clearly a factor to be considered in determining whether an individual’s Fourth Amendment rights have been violated * * * property rights are neither the beginning nor the end of this Court’s inquiry.” The court reasoned that an illegal search violates the rights of those that have a legitimate expectation of privacy in the invaded place and that merely the possession of the seized goods is not sufficient for the owner to have a legitimate expectation of privacy in the area searched. In People v Belton (55 NY2d 49), the court found (at p 53) that there “is the reduced expectation of privacy associated with automobiles and the inherent mobility of such vehicles”.
*525 “Under Rakas, a passenger will virtually never have standing to challenge a search of a vehicle, absent a claim of ownership of the articles seized * * * ‘a distinction also properly may be made in some circumstances between the Fourth Amendment rights of passengers and the rights of an individual who has exclusive control of an automobile or its locked compartments.’ Standing will also most likely be granted for other categories of passengers who can demonstrate use of a vehicle on a regular basis — for instance, employees of the automobile owner or regular participants in a car pool, as well as the owner’s family members.” (1 Ringel, Searches & Seizures, Arrests and Confessions, § 11.7, pp 11-31 — 11-32.) This defendant has not made any showing that he had a right to use the automobile on a regular basis nor has he demonstrated any basis for finding he had any legitimate expectation of privacy. He was merely a passenger invited for a ride.
The defendant, in this case, argues that because there is a presumption of possession he had a legitimate expectation of privacy in the vehicle, but in People v Leyva (38 NY2d 160), the court determined that the presumption provided for in the Penal Law does not shift the burden of proof and the People still have to prove beyond a reasonable doubt the guilt of the defendant. After hearing all of the evidence, including the presumption, the jury must still evaluate the presumption, which may be rebutted by the defendant or by the lack of credibility of the People’s witnesses. The failure to instruct the jury that the presumption may be disregarded is reversible error (People v Williams, 95 AD2d 866).
Since even actual admitted ownership of the articles seized would not, by itself, mean that a passenger in an automobile had the “legitimate expectation of privacy”, without some additional showing, certainly a rebuttable presumption of possession, which may be disregarded by the finder of the facts, does not, without other findings, result in such expectation. Here, the defendant, whether or not in possession of the articles in question, has not satisfactorily shown that he had a legitimate expectation of privacy in the area that was searched. Accordingly, the court finds that he has no standing to question the consti *526 tutionality of the search and seizure of the articles involved.
However, the defendant presents another argument to the court for his right to the suppression of the alleged contraband. He claims that the original stop of the vehicle was improper.
Fourth Amendment rights are personal rights (Rakas v Illinois, supra). In United States v Brignoni-Ponce (422 US 873), the court held that the Fourth Amendment forbids the stopping of a vehicle unless the officer has a “founded suspicion” of illegal activity, and at page 878 the court stated, “The Fourth Amendment applies to all seizures * * * that involve only a brief detention short of traditional arrest”. Then citing from Terry v Ohio (392 US 1, 16), it was found “ '[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has “seized” that person’ ” (422 US, at p 878). Certainly, if the original stop violated the defendant’s Fourth Amendment rights, any seizure made thereafter was also a violation of those rights (see, also, People v Ingle, 36 NY2d 413).
“While passengers are for the most part foreclosed from challenging searches of automobiles in which they are riding, they are not foreclosed from challenging the stop of the vehicle, since such a stop encompasses a personal seizure which each person in the vehicle has standing to challenge. Since the defendants in Rakas did not challenge the actual stop of the vehicle, the court ruled only on their right to contest the search.” (1 Ringel, op. cit., p 11-32.)
If the initial stop was a violation of defendant’s constitutional right, then all the evidence discovered as a result of the stop must be suppressed (United States v Montgomery, 561 F2d 875, 878).
It is also of interest to note that in Rakas v Illinois (supra), in a separate concurring opinion by Mr. Justice Powell, the court pointed up the difference between questioning the stop and the search itself and said (pp 150-151) “The petitioners do not challenge the constitutionality of the police action in stopping the automobile in which they were riding; nor do they complain of being made to get out of the vehicle. Rather, petitioners assert that their constitutionally protected interest in privacy was violated when *527 the police, after stopping the automobile and making them get out, searched the vehicle’s interior, where they discovered a sawed-off rifle under the front seat and rifle shells in the locked glove compartment.” He went on to state that the question before the court was a narrow one involving only the search.
Although the defendant has no standing to challenge the search of the vehicle, this court is satisfied that he does have standing to question whether the original stop was a violation of his personal Fourth Amendment rights. A hearing is ordered to determine solely whether the defendant’s constitutional rights were violated by the initial stop of the vehicle which detained the defendant. If such stop was violative of his rights, then, of course, the fruits of the ensuing search should be suppressed.
Said hearing, only for that purpose, is to be held on October 27, 1983, in Part 3, Criminal Court, West Wing, District Court, Mineóla, New York, 9:30 a.m.